Martin, J.
This is an action for the rescission of the indenture, by which the plaintiff’s son was bound as an apprentice to the defendant, on account of cruel treatment; the defendant pleaded the general issue, and that he moderately chastised the plaintiff’s son for his ill conduct, and particularly for having stabbed another apprentice of the defendant’s:—There was judgment for the plaintiff, and the defendant appealed.
By consent, the judge’s notes of the testimony came up with the record, in lieu of statement of facts, and the case has been submitted to us without an argument.
Dr. L’homoca deposed, that on the 23d of December, he was sent for to plaintiff’s son, who had some fever for three days, in consequence, he believes, of a flogging. He had been severely whipped from the shoulders downwards, and the bruises were apparent; there were already some scabs on his wounds, but they must have bled much, The deponent said, that in his opinion, a master has no right
*39 to beat so much (martiriser) his apprentice; the boy deserved to be more severely punished, but not by the master himself.
Blache deposed, the plaintiff’s son was brought to the mayor on the 23d, two days after he was whipt; he appeared to have been severely flogged; his shirt had blood on it; there were bluish marks of the whipping, which he thinks too severe for a master: the witness being asked whether he had seen these marks, answered yes, a little cut through, bluish, and a little bloody.
Carlos deposed, that the plaintiff’s son quarrelled, at their common shop, where four apprentices were at work by a candle, with a black boy, a slave of their master, the defendant. The white boy wounded the black on his side, and was himself wounded. The plaintiff’s son was taken into another room to be whipped; he came back bleeding through his shirt, and was sent to work again. They wished to whip him a second time, but the defendant’s partner begged him off.
On his cross-examination, this witness said he has been with the defendent since May, 1817; is well treated, as well as the other apprentices. When any quarrel arises among *40 the apprentices, the defendant must be informed of it, in order to settle it—they are rare. The plaintiff’s son was reproached with not having referred his quarrel with the black boy, to the defendant, and answered he had not the patience; to which the defendant replied, he would have the patience to whip him; he begged pardon; the defendant gave him many lashes; the witness does not recollect how many. The black boy was not punished.
Simon declared, he is the defendant’s neighbour, and saw the plaintiff’s son with his shirt bloody, having been severely whipt. He has apprentices but would not whip them so. He has not seen white apprentices more or so much whipt by any master. He saw the plaintiff’s son on the 22d, he might not be much cut, but bleeding.
Clifford deposed, he saw the plaintiff’s son's shirt, with blood on it, and on the next day saw him in bed with a high fever.
Longbottom, defendant’s partner, deposed—a quarrel arose between the plaintiff’s son and a black boy of defendant’s, who was wounded, by being stabbed in his side. He told the plaintiff’s son to complain to defendant, he said he had not patience. He saw the plaintiff’s son *41 whipt, and conceives the defendant might have chastised his own son in the same manner, for the same fault; he would have done so himself. He has seen, on other occasions, the defendant whip the black boy and others, on complaint. He has ordered them on such occasions to apply to him for redress.
Odder deposed as the preceding witness, in regard to the struggle between the white and black boys. The latter was wounded with scissors, and did not complain; the plaintiff’s son was wounded in his fingers. The quarrel arose about coming nearer to the light, and the whipping of the plaintiff’s son ensued; the defendant gave him about twenty or thirty strokes of a cow-skin; he would have whipped him a second time, but his partner begged his pardon; the defendant was in a great passion; the plaintiff’s son was not compelled to return to his work; the deponent, tho’ sleeping in the same room, did not hear him complain; he told him only not to come near him, in order likely not to hurt him; the black boy was not punished; the witness has lived five years with the defendant, and is well treated, whipped only when he deserves it, and no more; the scissors were long ones, with a side sharp; *42 the plaintiff’s son was whipt in the next room, and the deponent heard him say—enough, enough.
Homes deposed, that he had been three years with the defendant; he treats his apprentices as his own children, and not so severely as they occasionally deserve; he has had several apprentices, and the witness has never heard of a complaint among them.
Stawlons declared, that he has been five years with the defendant, and was only once corrected, more than he deserved, with a cow-skin:—on his cross-examination he said, that he was cruelly beaten; it was about two years ago; he was more beaten than the plaintiff’s son, who was severely beat, and had many cuts; he had no parents.
Anderson declares that he has been twelve years with the defendant; his apprentices are well treated; the plaintiff's son was his confidential boy, and is treated with great kindness, and better than his own son; he has always corrected him with a cow-skin, and he has never heard of a complaint; the witness was himself an apprentice; and has been ten times corrected so; and sometimes more than the plaintiff’s son; it has often appeared that *43 apprentices having been whipt and being gone home, were whipt by their parents and sent back.
Another witness (not named in the judges notes) declared, that he has been in the same situation, and a master cannot do without a cow-skin.
Dr. Deveze deposed, that on the 27th of December, at the request of the defendant, he visited the plaintiff’s son, who had been very lightly flogged; he thinks hardly to hurt him through the epidermis. The correction appeared to him severe, as to local circumstances; that is to say, on a quarrel with a black boy, but without danger.
The judge adds to his notes of the evidence, that the plaintiff ’s son exhibited his back and shoulders to him, where he saw the marks of twenty lashes at least, of a black or bluish colour, attesting the defendant’s severity. This was on the 9th of January last, eighteen days after the whipping.
These proceedings appear to me, grounded on a provision of our law, that if any master shall abuse, or cruelly, or evilly treat his indented servant or apprentice, or shall not discharge his duty towards him, in any of *44 these cases, there will be sufficient cause to release the aggrieved party from his engagement, or to grant him such other redress as the equity or the nature of the case may require, in the discretion of the judge. Civ. Code, 38, art. 9.
That a master may lawfully correct his apprentice is expressly provided by law; that he must not do so in a wanton or cruel manner, is equally undeniable. So that, the only inquiry in the present case is, whether the whipping inflicted on the plaintiff’s son, was so cruel, as to call for the forfeiture of the defendant’s right to the boy’s services, during the remaining years of his apprenticeship. Apprentices ought to be protected against the cruelty of their masters, but the latter purchase, during the first years of the apprenticeship, by the labour and trouble which they bestow on the instruction of the youth, and the expences of his maintenance, a right to his services, during the last years of the apprenticeship ; a right of which they are not to be deprived, without a sufficient cause.
The witnesses for the plaintiff, present a strong case, which, if considered with the feelings that accompany the consideration of *45 a helpless white boy, severely whipt for a struggle with a slave, may easily magnify his sufferings, so as to excite indignation against the author of them. But if the evidence these witnesses give, be patiently considered, this indignation will considerably subside.
Dr. L’homoca, who saw the plaintiff’s son two days after he was whipt, says the bruises were apparent; the wounds had scabs already, though they appeared to have bled much. His opinion is, that the boy deserved to be more severely punished, though he thinks the master ought not to have done it. Blache, who saw the boy on the same day, at the mayor’s, thinks the whipping was too severe for a master. The boy’s shirt had blood on it, and he describes the boy’s back as a little cut through, having bluish marks, and being bloody. Simon, who saw him on the 22d, the next day after the whipping, says, he never saw an apprentice so severely whipt by his master; and describes his back as not much cut, but bleeding. Thus the testimony of the plaintiff’s witnesses present the case of a boy severely whipt; his back cut and bleeding.
When we attend to the testimony of the defendant’s witnesses, we find, that they think the whipping was not, in their opinion. too *46 severe: that the boy was not thereby disabled a moment, to attend to his work. A gentleman of the faculty, who saw the boy six days after the whipping, thinks he was hardly whipt through the epidermis; another witness says, he would have whipt the boy as severely, if he had been his master.
If we divest the case of every thing which is matter of opinion, the result is, that the plaintiff’s son was whipt with a cow-skin; received twenty or thirty lashes; that his back bled; exhibited small cuts, and bluish marks, for having wounded a black boy, with a sharp instrument, in a quarrel. I am ready to say, that the correction appears to me a severe one; such as ought not to be countenanced. But it appears to me, that the case is not of so black a die as to deserve an absolute forfeiture of the defendant’s right to the boy’s services, during the rest of his apprenticeship. I therefore think, that the judgment of the parish court ought to be reversed, and that the defendant ought to pay the costs of the appeal.